

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

U.S. Department of Justice

2013 SEP 24  A 8: 17

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY

United States Attorney
District of Maryland
Northern Division

| | | |
|---|---|---|
| Rod J. Rosenstein<br>United States Attorney | 36 South Charles Street<br>Fourth Floor<br>Baltimore, Maryland 21201 | DIRECT: 410-209-4903<br>MAIN: 410-209-4800<br>FAX: 410-962-3091<br>TTY/TDD: 410-962-4462<br>Judson.Mihok@usdoj.gov |
| Judson T. Mihok<br>Assistant United States Attorney | | |

August 15, 2013

Gary Christopher, Esq.
Office of the Federal Public Defender
 for the District of Maryland
100 South Charles Street
Tower II, Suite 1100
Baltimore, MD 21201

> Re:    Plea Agreement in the Case of
>        <u>United States v. Tonie Pearl Winters</u> JFM 13-0414

Dear Mr. Christopher:

      This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have her execute it in the spaces provided below. If this offer has not been accepted by August 30, 2013, it will be deemed withdrawn. The terms of the agreement are as follows:

<u><b>Offense of Conviction</b></u>

      1.    The Defendant agrees to plead guilty to the Information now pending against her, which charges her with Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 2. The Defendant admits that she is, in fact, guilty of that offense and will so advise the Court.

<u><b>Elements of the Offense</b></u>

      2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

      First, a scheme to defraud and to obtain money and property by means of false or fraudulent pretenses;

Second, the Defendant's knowing and willful participation in the scheme with the intent to defraud and to obtain money and property by means of false or fraudulent pretenses; and

Third, that in advancing, furthering, or carrying out the scheme, the Defendant transmitted (or caused to be transmitted) any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

## Penalties

3.     The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: 20 years of incarceration, a $250,000 fine, and 3 years of supervised release.  In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing.  This Court may also order her to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.  If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.  The Defendant understands that if she serves a term of imprisonment, is released on supervised release, and then violates the conditions of her supervised release, her supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release.  The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4.     The Defendant understands that by entering into this agreement, she surrenders certain rights as outlined below:

a.     If the Defendant had persisted in her plea of not guilty, she would have had the right to a speedy jury trial with the close assistance of competent counsel.  That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community.  Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily.  All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count.  The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.     If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt.  The Defendant would have the right to

2

confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in her defense, however, she would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in her own defense if she so chose, and she would have the right to refuse to testify. If she chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from her decision not to testify.

e.      If the Defendant were found guilty after a trial, she would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against her. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that she may have to answer the Court's questions both about the rights she is giving up and about the facts of her case. Any statements the Defendant makes during such a hearing would not be admissible against her during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find her guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that pleading guilty may have consequences with respect to her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any potential immigration consequences.

i.      The Defendant has the right to have her case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against her. By agreeing to proceed by way of Information, she is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

### Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing

3

guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

a.      Pursuant to USSG §2B1.1(a)(1), the base offense level is **7**.

b.      Pursuant to USSG §2B1.1(b)(1)(E), the offense involved loss in excess of $120,000, so **10** levels are added.

c.      Pursuant to USSG §2B1.1(b)(2)(B), the offense involved 50 or more victims, so **4** levels are added.

d.      This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for her criminal conduct. This Office agrees to make a motion pursuant to USSG §3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of her intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about her involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw her plea of guilty.

h.      Therefore, the anticipated final adjusted offense level is **18**.

7.      The Defendant understands that there is no agreement as to her criminal history or criminal history category, and that her criminal history could alter her offense level if she is a career offender or if the instant offense was a part of a pattern of criminal conduct from which she derived a substantial portion of her income.

8.      This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

4

## Obligations of the United States Attorney's Office

9.     The parties stipulate and agree that, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), **a sentence of between 33 months and 41 months imprisonment (actual incarceration) in the custody of the Bureau of Prisons is the appropriate disposition of this case.** This agreement does not affect the Court's discretion to impose any lawful fine or to set any lawful conditions of supervised release. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, she will be afforded the opportunity to withdraw her plea agreement pursuant to the provisions of Federal Rule of Criminal Procedure 11(d)(2)(A).     Should the Government so elect, it will be afforded the opportunity to proceed on all counts of the Indictment.

10.     As stated above, at the time of sentencing, the United States Attorney's Office will recommend a sentence of between 33 months and 41 months imprisonment and a period of three years of supervised release.

11.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

## Waiver of Appeal

12.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b.     The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds **41 months;** (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below **33 months**.

c.     Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

5

d.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

13.      The Defendant understands that the court will, upon acceptance of her guilty plea, enter an order of forfeiture as part of her sentence, and that the order of forfeiture may include assets directly traceable to her offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.  Specifically, the court will order the forfeiture of all proceeds obtained or retained as a result of the offense, any property used to commit or to facilitate the commission of the offense, and all property involved in the offense. The Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

14.      The Defendant and the Government agree that it may be necessary for the court to make a factual determination regarding the amount of the money judgment or the forfeiture of certain assets.  To the extent that such a determination is necessary and it is not possible for the court to make that determination prior to the date of sentencing, the Defendant agrees to waive any right she may have to have the forfeiture determined at that time, and agrees that the court may make any necessary factual determination in a post-sentencing proceeding, and may amend the order of forfeiture and the judgment to include the forfeited property at that time.

## Assisting the Government with Regard to the Forfeiture

15.      The Defendant agrees to assist fully in the forfeiture of the foregoing assets. The Defendant agrees to disclose all of her assets and sources of income to the United States, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The Defendant further agrees that she will not assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding and that she will testify truthfully in any such proceeding.

## Waiver of Further Review of Forfeiture

16.      The Defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an

excessive fine or punishment. The Defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

## Restitution

17.     The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that she will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. It is anticipated that the full losses in this case are **$129,449.95** and that these losses were incurred by GE Capital.

## Collection of Financial Obligations

18.     The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

19.     In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

20.     The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

## Obstruction or Other Violations of Law

21.     The Defendant agrees that she will not commit any offense in violation of federal, state or local law between the date of this agreement and her sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under  U.S.S.G §3C1.1, or (ii) fails to accept personal

responsibility for her conduct by failing to acknowledge her guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw her guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that she may not withdraw her guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

22.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw her guilty plea, and will remain bound to fulfill all of her obligations under this agreement. The Defendant understands that neither the prosecutor, her counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

23.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

8

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Judson T. Mihok
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_8-29-13_____          _Tonie P. Winters_____
Date                                     Tonie Pearl Winters

I am Tonie Pearl Winters's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with her. She advises me that she understands and accepts its terms. To my knowledge, her decision to enter into this agreement is an informed and voluntary one.

_8/29/13_____          _____
Date                                     Gary Christopher, Esq.

9

## EXHIBIT A
## STIPULATED FACTS

*The undersigned parties hereby stipulate and agree that if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Tonie Pearl Winters (WINTERS), age 55, is resident of Washington, D.C.

Beginning in or about September of 2011 and continuing until on or about March 17, 2012, WINTERS devised a scheme to defraud that involved acquiring JC Penney credit card account numbers, which had been issued by GE Capital. WINTERS would then call GE Capital to ensure the accounts associated with these account numbers were active and to inquire about the available balances on the JC Penney credit card accounts. Once WINTERS confirmed the account numbers were legitimate and had available balances, she would then go to various JC Penney retail stores, including stores located in Wheaton, Waldorf, Columbia, and Hyattsville, Maryland. While at the JC Penney retail store, WINTERS would provide the account number she had been given on a piece of paper to the cashier to receive a temporary shopping pass, which she would then use to purchase gift cards and merchandise from JC Penney's. WINTERS would then sell the gift cards for approximately half their cash value and retain the money.

From September of 2011 through March 17, 2012, WINTERS consummated over 90 transactions utilizing fraudulently acquired over 50 JC Penney credit card accounts, which were held by GE Capital, to defraud and to obtain money and property by means of false or fraudulent pretenses. As a result, more than 50 victims had their JC Penney credit card accounts, which had been issued by GE Capital, compromised. The losses were in excess of $120,000. WINTERS knowingly and willfully participated in this scheme with the intent to defraud and to obtain money and property by means of false or fraudulent pretenses. WINTERS caused wire signals to be sent for each of these transactions from the retail JC Penney store in Maryland to the JC Penney's credit authorization database in Lenexa, Kentucky, or Columbus, Ohio, for the approval of purchases in furtherance of this scheme.

On May 29, 2013, WINTERS was arrested on a warrant based on a criminal complaint filed in United States District Court for the District of Maryland. After being advised of and knowingly, intelligently, and voluntarily waiving her rights pursuant to *Miranda*, WINTERS provided both an oral and written statement. WINTERS wrote that she was interested in making some money when she was approached by a Nigerian man who indicated that he could either sell her credit card account numbers or split the proceeds of sales of fraudulently acquired goods using the misappropriated credit card account numbers. WINTERS would then take the credit card account numbers and use them at various JC Penney stores to purchase goods and gift cards. WINTERS indicated that she would sell the gift cards to people she knew from clubs or hair salons to get the money that she needed.

I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

_8-29-13_
Date

_Tonie P. Winters_
Tonie Pearl Winters

I am Tonie Pearl Winters's attorney. I have carefully reviewed every part of this Factual Stipulation with her. She advises me that she understands and accepts its terms. To my knowledge, her decision to enter into this agreement is an informed and voluntary one.

_8/29/13_
Date

_Gary & Christopher_
Gary Christopher, Esq.

2